NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARMEN RODRIGUEZ,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Civil Action No.: 10-2666 (PGS)<br><br>MEMORANDUM AND ORDER |

SHERIDAN, U.S.D.J.

This matter comes before the Court on the appeal of Carmen Rodriguez from the Commissioner of Social Security's denial of her application for disability insurance benefits. The Court has reviewed the briefs of the parties, the issues presented by Rodriguez's attorney, and conducted a hearing.

I.

Plaintiff is a 63 year old Spanish-speaking woman born in Puerto Rico. She is 5'2 and weighs approximately 122 pounds. Her highest level of education completed is the 5th or 6th grade. (R. 112,193). She has no vocational or special job training. Plaintiff lives alone and has two daughters. (R.112) She worked at D. E. Jones as a cashier from November 1989 to May 2005. (R. 95, 155). According to Plaintiff, her duties included work as a cashier, answering the phone and other tasks. (R. 108). During Plaintiff's time as a cashier, she stood approximately four hours a day. (R.108). She also lifted boxes containing clothing. She reported that she frequently lifted 25 pounds. (R.109; *but see* R.122,128). In May 2005, Plaintiff stated that she stopped working because her

1

employer went bankrupt. (R.29, 95,107,113).

Plaintiff alleges that her disability began on January 1, 2006, approximately 8 months after she stopped work at D. E. Jones. At Plaintiff's hearing before the Administrative Law Judge on November 7, 2008, she stated that she did not know what happened that caused the pain in her leg and low back and that she had no special accident while working as a cashier. (R. 30-31). She complains of chronic lower back pain, osteoarthritis, and arthritis. (R. 157, 196).

II.

In reviewing a decision of an ALJ, the Court reviews whether the findings and decision are based on substantial evidence in the record. That is, whether the findings and decision are supported by substantial evidence in the record.  42 U.S.C. § 405(g).  *See Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Doak v. Heckler*, 790 F.2d 26, , 28 (3d Cir. 1986).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.*"* *Hartranft,* 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla.  *Richardson*, 402 U.S. at 401; *Morales*, 225 F.3d at 316.  Likewise, the ALJ's decision is not supported by substantial evidence where there is "competent evidence" to support the alternative and the ALJ does not "explicitly explain all the evidence" or "adequately explain his reasons for rejecting or discrediting competent evidence." *Sykes v. Apfel*, 228 F.3d 259, 266 (3d Cir. 2000). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory evidence, but may afford a treating physician's opinion more or less weight depending on the extent to which supporting explanations are provided." *Plummer* v. Apfel, 186 F.3d 422, 429 (3rd Cir.

1999).

The reviewing court must view the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) - - or if it really constitutes not evidence but mere conclusion.

*Morales*, 225 F.3d at 316 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)); *see also Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir. 1987). Nevertheless, the district court's review is deferential to the ALJ's factual determinations. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (en banc) (stating district court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder"). A reviewing court will not set a Commissioner's decision aside even if it "would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. But despite the deference due the Commissioner, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales*, 225 F.3d at 316 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

III.

Here, the ALJ's decision was supported by substantial evidence. The ALJ considered and evaluated evidence by Dr. Vassallind, who conducted a consultative examination on September 26, 2006. At the time of the examination, Plaintiff complained of low back pain every three weeks, lasting about 2-3 days, after which she experiences muscle tightness. She could sit for almost a half

hour, stand for about an hour, and walk for about one block. She walked without an assistive device, but walks very stiff and slow. Further examination found motion of the cervical spine was 40 degrees lateral flexion to the right and left, with 50 degrees forward flexion. There was some diminished lower lordosis, but motion of the lumbar spine was 80 degrees forward flexion and 20 degrees to the right and left. There was full range of motion of both elbows and wrists, and grip strength was 4/5. Plaintiff had some difficulty climbing to the examining table, but was able to maintain both lower extremities parallel to the floor without any back pain. Although transition from the sitting to the supine position was done with some difficulty, and she experienced some muscle tightness in her thighs and lower back, the straight leg test was 80 degrees in both lower extremities. She had full range of motion in both hips and knees, but had limited motion in her right ankle. Deep tendon reflexes were equal in both upper and lower extremities, there was no sensory deficit in either upper or lower extremities and muscle strength was 5/5 in both upper and lower extremities. Dr. Vassalind's conclusion was that Plaintiff had chronic low back pain without neurological deficit, most probably due to degenerative disc disease. Specifically, he recorded that "there is some diminished lumbar lordosis." Dr. Vassallind also found that Plaintiff's ability to move her right-ankle is diminished, and there is post-traumatic arthritis of the joint. However, he found that Plaintiff is able to use both hands for fine and gross manipulation, and she does not require any handheld assistive devices for ambulation.

      The ALJ also considered evidence from Dr. Goldbas, who conducted the Residual Functional Capacity Assessment. Dr. Goldbas determined that Plaintiff "is independent in activities in daily living, shops, prepares food, sweeps, mops, drives, and states that she can walk a block." The doctor acknowledged Plaintiff's lower back pain, and indicated that x-rays showed degenerative disc

4

disease. However, Dr. Goldbas indicated that Plaintiff can stand about six hours in an eight hour day and did not note any walking limitations.

Plaintiff treated with Leonor Ramos, M.D. of Hudson Community Health Center from 2003 through 2006. Dr. Ramos diagnosed Plaintiff with chronic lower back pain. However, a box dedicated to assessing whether Plaintiff was in pain or not was consistently checked "No". X-ray results from August 1, 2003, indicated there was evidence of a mild levoscoliosis through the upper lumbar region and a mild facet arthropathy present bilaterally at L4-5 and L5-S1. During Plaintiff's visit on May 24, 2005, Dr. Ramos noted that Plaintiff was "feeling very well." X-ray results received one day after Plaintiff's April 25, 2006 visit, showed some minimal degenerative changes at L5-S1. Except for those changes, no fracture or bone destruction was noted. During this time period of care, Plaintiff maintained a position as a cashier, and was allowed to continue this line of work while under medical care. Plaintiff's position required her to stand around four hours per day on a regular basis and she reported that she frequently lifted 25 pounds.

Based on all the evidence, the ALJ determined that Plaintiff is not disabled, and was able to perform light work.

IV.

Plaintiff's argument for reversal are set forth below.

Plaintiff's first argument is that the Commissioner failed to give proper weight to Plaintiff's complaints of chronic and severe pain, as well as her limitation of motion, function and weakness. In addition, Plaintiff complains the ALJ failed to evaluate her insomnia and depression. Generally, this argument is erroneous for several reasons.

1)      Plaintiff's primary complaint was chronic lower back pain, and the ALJ focused on that impairment in his decision.  The ALJ found that the consultative examination by Dr. Vassallind revealed that Plaintiff walked independently, and had a full range of motion of both hips and knees. In addition, the ALJ noted the following findings in the Residual Functional Capacity Assessment:

> The claimant was also noted as independent in her activities of daily living, as she was able to shop, prepare food, sweep, mop and drive a motor vehicle.  The claimant also reported being able to walk two blocks. Dr. Goldbas ultimately found that the claimant could perform the full range of light work, with the only limitations being occasional performance of the following task: climbing (ramps, stairs, ladders, ropes, and scaffolds); balancing; stooping, kneeling, crouching and crawling.

2)      The ALJ found that some of Plaintiff's subjective complaints of pain were not fully credible, and determined that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment [for light work]."

3)      Plaintiff relies heavily on Dr. Pizzaro's report and argues that the ALJ's failure to consider Dr. Pizzaro's conclusion in his decision is reversible harm.  Despite this argument, the report in question is a "check-the-box" form completed at the request of the N.J. Division of Family Development and contains limited detail or information about how Dr. Pizzaro's reasoned his diagnosis. Although Dr. Pizzaro found favorably for Plaintiff, there are few references to Plaintiff's treatment history or therapy undertaken.  The report is a very short overview of Plaintiff's condition, and is more of a conclusion than a typical diagnosis. Generally, "a single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence –

particularly certain types of evidence (e.g. that offered by treating physicians – or if it really constitutes not evidence, by mere conclusion). *Kent v. Schweiker*, 710 F. 2d 110, 114 (3d Cir. 1983); *Cotter v. Harris*, 642 F. 2d 700, 706 (3d Cir. 1981). *See generally*, *Morales v. Apfel*, 225 F. 3d 310 (3d Cir. 2000).

In this case, the form report by Dr. Pizzaro is "mere conclusion." There is no rationale set forth for his finding of disability. This report is insufficient because there were minimal or no notes of Dr. Pizarro's reasoning for finding Plaintiff disabled. For example there is no explanation of why Dr. Pizarro checked the box that Plaintiff would be disabled for more than twelve months.

Plaintiff's second argument is that her back impairment meets the requirements for disorders of the spine, and therefore Plaintiff should have been found disabled at Step 3 of sequential evaluation for determining disability. At Step 3, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR § 404 Subpart P Appendix 1 (20 CFR §416.920(d), § 416.925 and § 416.926). If Plaintiff's impairment meet or medically equals the criteria of a listing, the Plaintiff will be determined medically eligible for benefits. In said regard, Section 1.04 of the listing reads:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Certainly, the Plaintiff has degenerative disc disease and some nerve root compression as stated above. However, the ALJ did not find the Plaintiff suffers motor loss and sensory or reflex loss. The ALJ cited to Dr. Vassallind's diagnosis. The ALJ stated:

> Dr. Vassallind revealed that the claimant's deep tendon reflexes were equal in both upper and lower extremities; she had full range of motion of both hips and knees; there was no sensory deficit in both upper and lower extremities; and her muscle strength was 5/5 with a different group of muscles in both upper and lower extremities.

In addition, the Plaintiff could squat and had little muscle weakness. Based on the reliance upon Dr. Vassalind's findings, ALJ determined that Plaintiff does not meet the muscle weakness criteria of section of the listing.

Finally, Plaintiff argues that she can not perform light work. However, this is controverted by the Residual Functional Capacity assessment performed by Dr. Goldbas. Dr. Golbas concluded that Plaintiff can occasionally lift 20 pounds, frequently lift 10 pounds, can stand for about 6 hours in an 8 hour day, and has unlimited pushing and pulling capabilities. Dr. Goldbas also noted that Plaintiff has limitations regarding climbing, balancing, stooping, kneeling, crouching, and crawling, but there were no other manipulative, visual, communicative, or environmental limitations reported. The doctor concluded that Plaintiff's symptoms of back pain are due to degenerative disc disease, severity of her symptoms are proportionate, and the effect on Plaintiff's function is basically consistent. Moreover, Plaintiff "is independent in ADL's, shops, prepares food, sweeps, mops, drives, and states that she can walk a block." Dr. Goldbas cited the following specific facts as the basis of his conclusions:

> 58 year old female alleges back pain. Claimant has low back pain, takes ibuprofen. She reports pain is intermittently severe. Exam notes slow stiff gait without use of assistive device. She is able to squat, but unable to walk on heels/toes. She has limitation in movement right ankle, has LS flex 80 degrees, and SLR to 80 degrees. Strength is normal and there is no sensory loss. X-ray LS spine shows degenerative disc disease.

V.

Based on the reasons set forth above, the decision of ALJ in this matter is supported by the substantial evidence in the record.

IT IS on this 12th day of September, 2011

ORDERED that the decision of the ALJ is affirmed. The Complaint is dismissed.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.